CRABTREE, J.T.C.
This is a local property tax case involving defendant’s continuing entitlement to exemption pursuant to N.J.S.A. 54:4-3.6. Both parties have moved for summary judgment. For the reasons hereafter set forth, plaintiff’s motion will be denied and defendant’s motion will be granted.
The facts are undisputed.
The subject property, owned by defendant, is 13 acres of land located on Castle Point in Hoboken (Block 258, Lots 1, 4 and 5). Ten acres are riparian and three acres are upland. The upland parcel is improved with the so-called physical plant building, *72 which was erected in 1974. It has since been used exclusively by defendant for educational purposes.
On January 1, 1987 defendant’s trustees entered into a 95-year ground lease for the subject property with 777 Sinatra Drive Corporation, a wholly-owned subsidiary of Hartz Mountain Industries, Inc. (Hereafter, the lessee will be referred to as Hartz.) The lease contemplated Hartz’s construction of a 600,000-square foot office building. Section 34.1 of the lease agreement provided:[1]
Within ninety (90) days of the date hereof Tenant shall complete its application (“Application”) for final, unappealable approval (“Approval”) by either or both of the Town Planning Board or Zoning Board of Tenant’s proposed construction of approximately 600,000 Rentable Square Feet of Rentable Improvements for the uses and purposes as set forth herein and shall submit the Application to the appropriate Board(s). Said Application shall set forth the specification for only such improvements as shall conform in all respects to the Design Guidelines. Tenant agrees that it shall use its best efforts to obtain the Approval.
Section 34.2A of the lease agreement provided:
If Approval is not obtained by the date which is six (6) months from the date on which the Application shall have been first submitted to either of the Town Planning Board or Zoning Board (the “Approval Period”) and Tenant has not exercised its right to extend the Approval Period pursuant to Section 34.2B below, then Tenant may elect to terminate this Lease upon written notice to Landlord given not later than thirty (30) days after the expiration of the aforesaid six (6) month period. Within fifteen (15) days of such termination, Landlord shall return to Tenant, in immediately available funds, the sum of Five Hundred Thousand Dollars ($500,000) of the Six Hundred Thousand Dollars ($600,000) of prepaid Fixed Rent.
By letter agreement dated January 21, 1987 Hartz agreed to design and build for Stevens a physical plant building to replace the existing building on the subject premises in such other location as Stevens might designate. The building was to be constructed at Hartz’s expense, with a ceiling on the construction cost. Stevens was also given the right, exercisable within six months following the date of the letter agreement, to approve the design of the new physical plant building.
The letter agreement went on to provide:
Tenant agrees that Landlord may continue to use the existing physical plant building at no rental cost to Landlord and at no cost to Tenant and that Tenant *73 will not disturb Landlord’s use and occupation of the existing physical plant building until the new physical plant building to be constructed by Tenant is complete as evidenced by a certificate of occupancy, at which point the existing physical plant building may be torn down by Tenant.
Prior to the transactions described above, the subject property was exempt as real property used for educational purposes.
Defendant’s assessor concluded that the ground lease disqualified the property for continuing exemption and, acting in apparent compliance with N.J.S.A. 54:4-63.26, he revoked the exemption and assessed the property on July 1, 1988, prorated for the last six months of 1988.
Stevens appealed to the Hudson County Board of Taxation, which entered judgment canceling the assessment and restoring the exemption. Hoboken filed a complaint in this court seeking reversal of the county board judgment.
It is important to observe at the outset that the burden of proving tax-exempt status is always upon the claimant, even when the taxing district initiates the action in this court to overturn a county board judgment. Weymouth Tp. v. Memorial Park Family Practice Center, Inc., 7 N.J.Tax 589 (Tax Ct.1985).
The relevant statute is N.J.S.A. 54:4-3.6, which, as amended by L. 1977 c. 370, provides, pertinently:
The following property shall be exempt from taxation under this chapter: All buildings actually used for colleges, schools, academies or seminaries, provided that if any portion of such buildings are [sic] leased to profit-making organizations or otherwise used for purposes which are not themselves exempt from taxation, said portion shall be subject to taxation and the remaining portion only shall be exempt____
It is a settled principle in this State that all property must bear its just share of the public burden of taxation and, thus, statutes granting exemption from this burden are strongly construed against those claiming exemption. Princeton Univ. Press v. Princeton, 35 N.J. 209, 172 A.2d 420 (1961); Fairleigh Dickinson Univ. v. Florham Park, 5 N.J.Tax 343 (Tax Ct.1983). However, exemption statutes must also be construed reasonably so as not to defeat their evident legislative design. Princeton Tp. v. Tenacre Foundation, 69 N.J.Su *74 per. 559, 174 A.2d 601 (App.Div.1961). To put it another way the principle of strict construction does not justify distorting the statutory language or the legislative intent. Boys’ Club of Clifton, Inc. v. Jefferson Tp., 72 N.J. 389, 398, 371 A.2d 22 (1977). The contentions of the parties must be evaluated with the foregoing principles in mind.
Plaintiff construes the relevant part of N.J.S.A. 54:4-3.6, quoted above, to mean that the mere execution of a lease with a profit-making organization destroys the exemption for the leased portion of the property involved. The argument is unsound. It ignores defendant’s continuing use of the physical plant building pursuant to the letter agreement of January 21, 1987, as well as defendant’s ownership of that building and the rest of the demised property.
Our courts have uniformly held that exempt status is contingent on the confluence of use and ownership. Jabert Operating Corp. v. Newark, 16 N.J.Super. 505, 85 A.2d 216 (App.Div. 1951); Shelton College v. Ringwood, 48 N.J.Super. 10, 136 A.2d 660 (App.Div.1957); Catholic Relief Services, U.S.C.C. v. South Brunswick Tp., 9 N.J.Tax 25 (Tax Ct.1987), aff’d o.b. per curiam 9 N.J.Tax 650 (App.Div.1987). This principle is reflected in the very statute upon which plaintiff’s assessor relied in revoking the exemption in the middle of tax year 1988. N.J.S.A. 54:4-63.26 provides that: “[wjhenever any real property is by law exempt from taxation and the right to such exemption ceases by reason of a change in use or ownership of such property, the same shall be assessable as omitted property____” Emphasis supplied.
In the instant case neither the use nor the ownership of the subject property changed.
The issue is thus narrowed to the effect of the ground lease of January 1, 1987 on the property’s exempt status. That instrument, in turn, must be read in conjunction with the letter agreement of January 21, 1987.
The lease and the letter agreement, read together, indicate that Hartz has not entered into possession of the demised *75 premises. Rather, defendant is entitled to remain in possession and to continue its use of the old physical plant building until Hartz’s completion of a newly constructed building to be occupied by defendant, at which point Hartz would be entitled to raze the old building. The instruments also indicate that, if Hartz failed to obtain planning board or zoning board approval of its proposed 600,000-square foot office project by a specified time, Hartz had the unilateral right to terminate the lease and recover $500,000 out of $600,000 of prepaid rent.
It thus appears that the lease agreement at all times pertinent, remained wholly executory. Indeed, the lease was not merely executory; it was aleatory, i.e., performance thereunder was contingent upon the happening of a future event, viz., planning board or zoning board approval of Hartz’s proposed project. See 6 Williston, Contracts (3 ed. Jaeger 1962), § 888 at 571-572.
I conclude from the foregoing that what facially appears to be a lease is nothing more than an agreement to enter into a lease at some indefinite future date provided governmental approvals are obtained. Put differently, the lease provisions for a refund to Hartz of $500,000 of prepaid rent upon Hartz’s failure to obtain governmental approval of its proposed office project, are equivalent to an option to enter into a lease, the consideration for which is defendant’s retention of $100,000 in prepaid rent.
Plaintiff’s motion for summary judgment will be denied. Defendant’s cross-motion for summary judgment will be granted.

 Sections 34.1 and 34.2A were both amended in a nonsubstantive fashion by an agreement of September 29, 1988. As that agreement was executed beyond the time frame germane to this case it plays no part in the court’s decision.