PIZZUTO, J.T.C.
Plaintiff Mega Care, Inc. (“Mega Care”) contests the assessments on property designated Block 905, Lots 13 and 14, in Union Township for years 1986 through 1992. The complaints seek reduction of the assessments and alternatively claim entitlement to exemption under N.J.S.A 54:4-3.6. The particular exemption claimed is that for property “used in the work of associations and corporations organized exclusively for hospital purposes,” and the property in question was utilized on the assessment dates for the subject tax years as a skilled nursing facility or nursing home, known as Cornell Hall.
Defendant taxing district has moved for partial summary judgment denying the exemption claim on the ground that the certificate of incorporation of Mega Care, which is both the owner of the property and the operator of the nursing home, does not specifically include hospital operations among its stated corporate purposes. Mega Care acknowledges that hospital purposes are not recited in the certificate. It maintains, however, that incorporation for hospital purposes is not a condition of exemption where the nursing home operations are integrated with those of a hospital operated under common ownership and control with the *569 nursing home. It further maintains that it can demonstrate such integration of Cornell Hall’s operations with those of Union Hospital, located opposite the nursing home.
A similar claim of a hospital purposes exemption for a nursing home was presented in Intercare Health Systems, Inc. v. Cedar Grove Tp., 11 N.J.Tax 423 (Tax 1990), aff'd, 12 N.J.Tax 273 (App.Div.1991), certif. denied, 127 N.J. 558, 606 A.2d 369 (1992). The nursing home at issue in Intercare was owned and operated by a nonprofit corporation that was in turn controlled by another nonprofit corporation. The controlling or parent corporation also controlled other nonprofit corporations that engaged in various health care activities, including the operation of a hospital. Exemption for the nursing home was claimed on the basis of the corporate relationship with the hospital and agreements respecting transfer of patients between the nursing home and both the affiliated hospital and nine unaffiliated hospitals. 11 N.J.Tax at 428.
In the Tax Court opinion in Intercare, Judge Hopkins observed that the entity that operated the nursing home was neither authorized to operate, nor did it operate, a hospital. Accordingly, its property did not qualify for exemption “on that basis.” Id. at 430. In other words, the exemption could not be claimed by the entity as a hospital. Rather, the claim was that the nursing home was used for hospital purposes because of the coordination of its operations with those of the affiliated hospital and the other hospitals with which it had transfer agreements. In this regard, Judge Hopkins articulated the test as “whether [the nursing home’s] operation was sufficiently integrated with a hospital so that its building’s use was an integral part of operating a functioning hospital.” Id. at 431. He found as a matter of fact that the nursing home’s relationships with the hospitals were “cooperative, rather than integral.” Id. at 432.
The Appellate Division affirmed per curiam. It recited and evidently approved Judge Hopkins’s formulation of the integrated operations test, and accepted his conclusion that the test was not satisfied. The Appellate Division opinion also included the follow *570 ing language, on which the taxing district essentially bases its partial summary judgment motion:
Furthermore, according to [the nursing home operator’s] certificate of incorporation, it was incorporated “to create a private corporation to construct or to acquire a housing project or projects, nursing home or homes, and to operate the same.” Therefore, [the operator] fails to satisfy the statutory requirement that the corporation claiming the exemption must have been incorporated for hospital purposes.
[12 N.J.Tax at 275.]
The taxing district contends that this paragraph absolutely precludes the allowance of a hospital purposes exemption for a nursing home, unless the entity that owns the nursing home is itself incorporated for hospital purposes.
The significance of the language quoted from the Appellate Division decision is not immediately apparent, given its juxtaposition with the expression of an affirmance of the Tax Court judgment substantially for the reasons stated in Judge Hopkins’s opinion. The language of the certificate of incorporation was not dispositive in Judge Hopkins’s analysis. Had it been, there would have been no necessity to formulate the integrated operations test and to conduct a factual inquiry into the nursing home’s operations. It is precisely the point of the taxing district’s argument, however, that no inquiry beyond that concerning the language of the certificate of incorporation is necessary here.
The Appellate Division did not indicate that its discussion of the claimant’s corporate purposes was either a substitute for, or an alternative to, the reasoning of the trial court, and the strict force of that discussion may be dictum. It nevertheless commands respect in the instant proceeding. It reflects, moreover, the conventional understanding of N.J.S.A. 54:4-3.6. Judge Hopkins, in Intercare, considered the statutory requirement that the exemption claimant be “organized exclusively” for the qualifying purpose to address the actual operation of the claimant, rather than its stated corporate purposes. More recent Tax Court decisions, however, employ an organization test that looks, at least in part, to the purposes recited in the claimant’s certificate of incorporation. Fountain House of New Jersey, Inc. v. Montague Tp., 13 N.J.Tax 387, 397-402 (Tax 1993); Planned Parenthood of *571 Bergen County, Inc. v. Hackensack, 12 N.J. Tax 598, 609-610 (Tax 1992), aff'd. 14 N.J.Tax 171 (App.Div.1993).
There is, therefore, as the Appellate Division decision expressed it, a “statutory requirement that the corporation claiming the exemption must have been incorporated for hospital purposes.” Intercare, supra, 12 N.J.Tax at 275. This is not to say, however, that Mega Care must itself be a hospital. The exemption is claimed for property utilized as a nursing home by a nonprofit corporation that is operated under common control with a hospital corporation whose own property is exempt when used for hospital purposes. Plaintiff maintains that it can at trial demonstrate the integration of the nursing home’s operations with those of the hospital. This motion addresses the statutory requirement concerning Mega Care’s own corporate organization that must be satisfied before an inquiry may proceed into the integration of its nursing home operations with those of the affiliated hospital.
For the years in question,[1] N.J.S.A. 54:4-3.6 provided in pertinent part:
The following property shall be exempt from taxation under this chapter: ... all buildings actually used in the work of associations and corporations organized exclusively for hospital purposes, provided that if any portion of a building used for hospital purposes is leased to profit-making organizations or otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion only shall be exempt; ... the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair employment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent; ... provided, in case of all the foregoing, the buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit,____ The foregoing exemption shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is ... authorized to carry out the purposes on account of which the exemption is claimed____
[Emphasis added.]
*572 Several distinct conditions must be satisfied for the exemption to apply:
—use of the property in the work of an entity organized exclusively for hospital purposes;
—nonprofit operation;
—ownership by the entity claiming the exemption; and
—authority “to carry out the purposes on account of which the exemption is claimed.”
In the present case it is not disputed that all the related health care corporations are nonprofit entities. Similarly, there is no question that Union Hospital is incorporated, organized, and regulated by public authority as an acute care hospital. Nor is there a question that Cornell Hall is correspondingly incorporated, organized and regulated as a skilled nursing facility. Finally, there is no question that the property constituting the nursing home is owned by the entity that operates the nursing home.
It is important to recognize that the issue presented involves not only the requirement of organization for hospital purposes but also the requirement that the property for which the exemption is claimed be owned by the entity claiming the exemption. It is well established that hospital purposes include a variety' of activities when undertaken to support the operation of a hospital. New Brunswick v. Rutgers Community Health Plan, Inc., 7 N.J. Tax 491 (Tax 1985). The provision of long-term care in a nursing home environment was recognized, for property tax exemption purposes at least,[2] as such an activity in Intercare, supra. If the ownership requirement is satisfied where a particular hospital purpose is accomplished through an affiliated corporation, then the organization requirement that applies to the affiliate is different from that which applies to the hospital. Since the hospital independently satisfies the organization requirement, it would not be necessary that the affiliate duplicate the hospital by *573 a separate organization to perform the entire array of hospital functions. It would suffice that the affiliate be incorporated for a particular hospital purpose that is limited to the support of the related hospital. The affiliate would then itself be an entity organized for hospital purposes.
Decisions addressing the ownership requirement have concluded that exemption requires a confluence of ownership and use (i.e. that the entity for whose purposes the exemption is allowed actually own the property). See, e.g., Bethany Baptist Church v. Deptford Tp., 225 N.J.Super. 355, 360, 542 A.2d 505 (App.Div. 1988); Secondary School Admissions Test Board, Inc. v. Princeton Bor., 13 N.J.Tax 467, 472 (Tax 1993); Hoboken v. Trustees of Stevens Inst., 11 N.J.Tax 70, 74 (Tax 1990), aff'd, 247 N.J.Super. 215, 588 A.2d 1262 (App.Div.), certif. denied, 126 N.J. 336, 598 A.2d 893 (1991); Catholic Relief Serv., U.S.C.C. v. South Brunswick Tp., 9 N.J.Tax 25, 28 (Tax), aff'd o.b., 9 N.J.Tax 650 (App.Div.1987). The circumstance of ownership through a subsidiary or, as presented here, ownership through a commonly controlled entity, has not, however, been previously addressed in this state.
In considering whether confluence of ownership and use can be found where property claimed to be used for hospital purposes is owned by a hospital subsidiary or affiliate, it is appropriate to recall the admonition of Princeton Tp. v. Tenacre Found., 69 N.J.Super. 559, 174 A.2d 601 (App.Div.1961) concerning requirements for property tax exemption:
It is a fundamental principle of government that ordinarily all property shall bear its just and equal share of taxation. The burden of proving a tax exempt status is upon the claimant, and statutes granting exemption from taxation are strictly construed against anyone claiming an exemption thereunder. Princeton University Press v. Borough of Princeton, 35 N.J. 209, 172 A.2d 420 (1961). However, the basic inquiry always is the legislative intent expressed in the statute. To that end the construction, while strict, must always be reasonable, and words are not to be given a rigid scholastic interpretation when it appears that they were used in another sense. The rule of strict construction must never be allowed to defeat the evident legislative design. Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 122 A.2d 339 (1956).
[Id. 563, 174 A.2d 601.]
*574 It is not unreasonable to infer that the purpose or design inherent in the requirement of confluence of ownership and use is to assure that exempt property is not only put to an eligible use, but also that it is held for and appropriated to the user’s exempt purposes. There is, moreover, persuasive authority that “it is immaterial for purposes of property-tax exemption that ownership of a particular piece of property is technically in the name of a separate legal entity so long as the property is actually owned and controlled by a tax-exempt organization and is used for appropriate qualified purposes.” Community Hospital Linen Serv. v. Commissioner of Taxation, 309 Minn. 447, 245 N.W.2d 190, 194 (1976)[3]; see also State v. Board of Foreign Missions of Augustana Synod, 221 Minn. 536, 22 NW.2d 642 (1946). Whether the requirement is expressed in terms of use and control or appropriation to exempt purposes, the substance of the ownership requirement is satisfied with respect to the property of a subsidiary or commonly controlled affiliate of an exempt entity, if the affiliate’s operations are limited to support of that entity.
*575 Both the ownership requirement and the requirement of incorporation for hospital purposes should, therefore, be considered satisfied where it can be shown that the affiliate’s certificate of incorporation limits its activities to those undertaken in support of and integration with those of the hospital. No particular form of language is required, but the substance of an organic integration of the entities must be reflected in the affiliate’s corporate charter. If this condition is satisfied, N.J.S.A. 54:4-3.6 does not preclude exemption for property actually used for hospital purposes, but operated through a subsidiary or affiliate of the hospital, rather than by the hospital itself.
Mega Care’s certificate of incorporation does not specifically limit its activities to those conducted in support of and integration with the hospital whose operations are contended to be integrated with those of the subject nursing home.[4] Accordingly, the proof of integration would be insufficient to support the exemption claim, and partial summary judgment denying the claim shall be entered. The matters shall proceed to trial, if required, on the valuation claims.

By amendment effective for years beginning with 1994, certain nonprofit health care facilities for the elderly, including nursing homes, qualify for exemption without regard to their connection with hospitals, L. 1993, c. 166.

 This motion does not present and this opinion does not address technical questions of health law concerning the distinction between facilities for acute care (hospitals) and skilled nursing care (nursing homes) and whether a single facility may be permitted to operate for both purposes.

 Community Hospital Linen Services allows tax exemption for property of nonprofit corporations established to provide laundry, collection and printing services to several hospitals. The entities were incorporated and controlled cooperatively by the hospitals, themselves nonprofit entities, whose own property was exempt. Exemption for property of similar cooperative hospital service entities has been allowed in other states as well. See, e.g., Department of Revenue v. Central Medical Lab., 555 S.W.2d 632 (Ky.Ct.App.1977); Children’s Hosp. Medical Ctr. v. Board of Assessors of Boston, 353 Mass. 35, 227 N.E.2d 908 (1967); Hospital Purchasing Serv. of Mich. v. City of Hastings, 11 Mich.App. 500, 161 N.W.2d 759 (1968); Shared Hosp. Serv. Corp. v. Ferguson, 673 S.W.2d 135 (Tenn.1984). Whether City of Trenton v. Trenton Masonic Temple Ass'n, 8 N.J.Misc. 778, 151 A. 753 (Sup.Ct.1930), aff'd, 108 N.J.L. 419, 158 A. 395 (E. & A. 1932) would stand as an obstacle to exemption for such facilities in this state is not now at issue. Trenton Masonic denied an exemption for a building owned by a nonprofit corporation organized by several Masonic lodges for the purpose of construction, operation and maintenance of that building (the Trenton Masonic Temple). The decision was legislatively overruled on its own facts in 1931. (See L. 1931, c. 372, which added to N.J.S.A. 54:4-3.6 the language dealing with buildings used in the work of two or more entities organized exclusively for moral and mental improvement.) Trenton Masonic is distinguishable, moreover, from the present matter in that the property here is claimed to be used in a single unified enterprise, rather than by multiple users, and here ownership is accompanied by operations that go beyond the maintenance of the property.

The purposes recited in the certificate are the operation of one or more skilled nursing facilities and "[to] support and encourage health care services through providing financial and management assistance to and in all other ways aiding and supporting social and health care related organizations exempt from Federal income tax____” There is no identification of a particular hospital. It is contended that Mega Care's by-laws specifically reflect integrated operation with a hospital; but the applicable portions of the by-laws are not clearly found in the moving papers, and the requirement of incorporation for hospital purposes pertains, the cases all indicate, to the certificate, not to the by-laws.