NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

TAX COURT OF NEW JERSEY



**Mala Sundar**
  **JUDGE**

R.J. Hughes Justice Complex
 P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 815-2922
 TeleFax:   (609) 376-3018
taxcourttrenton2@judiciary.state.nj.us

January 5, 2018

Kevin McDonald, Esq.
Edward Purcell, Esq.
DiFrancesco Bateman et al.
15 Mountain Boulevard
Warren, New Jersey 07059

Robert Selvers, Esq.
Wilentz Goldman & Spitzer, P.A.
90 Woodbridge Center, P.O. Box 10
Woodbridge, New Jersey 07095

> Re:  Township of Freehold v. CentraState Healthcare Services, Inc.
> Docket Nos. 000047-2016; 000048-2016; 002998-2016
> CentraState Healthcare Services, Inc. v. Township of Freehold
> Docket No. 007636-2016
> Block 86, Lot 5.101

Dear Counsel,

This is the court's opinion on the motions for reconsideration filed by the Township of Freehold ("Township"), a party in the above captioned matters.

In its prior motions for partial summary judgment, the Township had maintained that the above captioned property ("Subject") is ineligible for local property tax exemption under N.J.S.A. 54:4-3.6.  This was because its owner, CentraState Healthcare Services, Inc. ("CHSI"), the other party herein, is not a non-profit entity, but is organized as a domestic for-profit corporation under Title 14A of the New Jersey statutes.

*

The court in an oral opinion, denied the motions. It noted that CHSI could be entitled to a derivative tax exemption pursuant to Intercare Health Systems, Inc. v. Township of Cedar Grove, 11 N.J. Tax 423 (Tax 1990), aff'd, 12 N.J. Tax 273 (App. Div. 1991), certif. denied, 127 N.J. 558 (1992), and Mega Care, Inc. v. Township of Union, 15 N.J. Tax 566 (Tax 1996). In those two cases, the courts held that nursing homes owned by a subsidiary of a non-profit parent hospital could be tax exempt if the subsidiary's operations were fully or substantially integrated with the non-profit parent's hospital purposes. Since the facts in the instant matter indicated that CHSI was a subsidiary of a non-profit parent hospital; the Subject was used as an offsite medical care facility for delivery of health care services by a sister subsidiary, which is also a non-profit entity; and since CHSI's by-laws prohibited any individual from receiving any profit from CHSI's operations, the court noted that Intercare and Mega Care may provide a basis for tax exemption for the Subject. However, facts still needed to be fleshed out as to the integration, therefore, the court denied the Township's motions for partial summary judgment.

The Township then timely sought reconsideration claiming that the court erred as a matter of law and fact because the subsidiaries in Intercare, supra, and Mega Care, supra, were organized as non-profit entities whereas, here, CHSI was organized as a for-profit entity. CHSI opposed reconsideration contending that regardless of this difference, the issue remained unchanged, namely facts as to integration had to be established before summary judgment could be granted.

For the reasons stated more fully below, the court grants the Township's reconsideration motions because it erroneously assumed that the subsidiaries in Intercare, supra, and Mega Care, supra, were for-profit entities similar to CHSI. The court also grants the Township's partial summary judgment motions because CHSI's incorporation as a for-profit entity disqualifies it from obtaining a tax exemption for the Subject. The effect of this ruling is to revoke the exemption

granted to the Subject for tax years 2014 to 2016. The issue of valuation remains to be tried for all years.

**PROCEDURAL HISTORY**

For tax years 2014 to 2016, the tax years before this court, the Subject was assessed at $725,800. However, it was not taxed because it was classified as 15F property, i.e., exempt. See N.J.A.C. 18:12-2.2(q) ("real property exempt from taxation" is classified as Class 15F).

The Township challenged the exempt status of the Subject by filing petitions to the Monmouth County Board of Taxation ("County Board"), and sought to impose taxable assessments (as omitted for tax years 2014 and 2015, and as regular for tax year 2016). By judgment dated December 15, 2015, the County Board dismissed the petitions without prejudice using judgment code "6B" ("hearing waived") for tax years 2014 and 2015 (the judgment for the 2015 tax year stated "nunc pro tunc to correct the original assessment"). For 2016, the County Board dismissed the petition without prejudice using judgment code "6A" ("tax court pending") by judgment dated February 29, 2016. On the same date, the County Board issued another judgment pertaining to the Subject for tax year 2016, but where CHSI was the petitioner. The judgment dismissed CHSI's petition using code "6A" ("tax court pending").

The Township then filed three complaints with this court for tax years 2014 to 2016. The complaints alleged that the Subject or portions thereof were "being used for profit," or was/were not being "used for a hospital purpose," therefore, the tax exemption granted violated the law and the New Jersey Constitution. The complaints also alleged that the assessment for each tax year was less than the Subject's true value. CHSI filed counterclaims for tax years 2014 and 2015.

CHSI also filed a complaint with this court contesting that the County Board's judgment for 2016 on the issue of valuation.

On May 26, 2017, the Township filed a motion for partial summary judgment in each of the four cases, seeking an order denying tax exemption to the Subject. The court heard oral arguments and denied the motions based on an analogy to Mega Care, supra, and Intercare, supra. The Township then filed timely reconsideration motions, which CHSI duly opposed.

**FACTS**

The following undisputed facts are taken from the pleadings as supported by certifications. CHSI is owned 100% by CentraState Healthcare System, Inc. ("Parent"). Parent also owns another entity CentraState Medical Center d/b/a The Family Medicine Center ("CMC"). Both Parent and CMC are incorporated as non-profit entities.[1]

The Subject is a 3,845 square foot unit in an office condominium complex. It is owned by CHSI. It is exclusively occupied and used by CMC. The New Jersey Department of Human Services has identified the Subject as CMC's "offsite hospital service," or facility, and approved it "as a Hospital-based offsite ambulatory care facility . . . for the delivery of healthcare services."

CHSI was the result of a 1995 name change to Wellness, Inc., an entity incorporated in 1983 under Title 14A of the New Jersey laws, which governs corporations organized for-profit. Wellness Inc.'s certificate of incorporation stated its purpose was "to engage in any activity within the purposes for which corporations may be organized under the 'New Jersey Business Corporation Act,' N.J.S.A. 14A:1-1 et seq." All-state Legal Supply Co., located at 156 W. State

---

[1] CMC was the result of a 1993 name change to "The Greater Freehold Area Hospital, Inc." by an amendment to the latter's certificate of incorporation. The Greater Freehold Area Hospital was incorporated in 1964 as a non-profit entity under Title 15 (the predecessor to Title 15A), which governed non-profit entities. Per its certificate of incorporation, it was organized "for a lawful purpose other than pecuniary profit," and its purposes were to "study . . . investigate . . . erect, maintain and manage hospital and medical facilities;" supply or furnish the necessary medical staff to such hospitals or medical facilities; "solicit and accept funds" from the public and the government; and any other activities allowed by the New Jersey statutes for non-profit entities. Upon dissolution, its assets were to be distributed "only" to a federally recognized tax-exempt organization.

4

St., Trenton, was listed as the incorporator. The certificate of incorporation was filed "for" the law firm of Cerrato, O'Connor, Mehr & Saker, located at 64 East Main Street, Freehold, New Jersey (which was also the address of Wellness Inc.'s registered office). Many of the ten individuals listed as members of Wellness Inc.'s Board of Directors were Trustees of Greater Freehold Area Hospital, Inc. (now known as CMC, see supra n.1).

The name change to CHSI in 1995 was the only amendment to Wellness Inc.'s certificate of incorporation. Thus, CHSI continued to be incorporated under Title 14A and its organizational purposes remained the same as stated in the certificate of incorporation, namely, to engage in any activity permitted under Title 14A. Ms. Guttler, an Assistant Secretary of CHSI (who was also an officer of, and corporate counsel to, Parent), certified that she had drafted the amendment for the "sole purpose" of the name change, however, since the certificates of incorporation (original and amended) used "rigid" pre-printed forms created by All-state Legal Supply Co., they did not allow any "room for" including details such as corporate purpose. This forced the inclusion of only a "cursory description" of the corporate purpose (i.e., to do any activity "within the purposes for which" entities organize under N.J.S.A. 14A:1-1 et seq.). She averred that notwithstanding, CHSI (and Wellness Inc.) intended "to support the nonprofit" CMC "as well as other nonprofit entities within" the corporate family, and has "always supported the charitable mission" of CMC.

The by-laws of CHSI (effective February 9, 2012, and signed by Ms. Guttler) state that, as one of the "corporations in the CentraState Family (consisting of [Parent] and its subsidiaries)," its purpose "is to engage in such activities as are permitted by law, including any health related activities that would benefit the communities which are served by" the Parent and its subsidiaries. Three of its five directors were required to be either "trustees of the Board of" the Parent or affiliated with the Parent, and had to include the president and CEO of the Parent or its subsidiaries.

5

Administration of CHSI was by a CEO who was the Senior VP/CFO of the Parent or its subsidiaries. Among others, the CEO's responsibilities included preparing annual budgets for all entities within the CentraState family, and "working continually with other health care professionals to the end that high quality care may be rendered to all patients of" CHSI.[2] CHSI could not incur debts for itself (or mandate a subsidiary to incur a debt) except for those "specifically provided for and approved in" the CentraState family's annual budgets or as approved by CHSI's Board. CHSI could not "adopt or undertake" any "long term strategic planning," "make or approve any expenditure from any of [its] principal assets," or "sell or encumber assets" of any entity of the CentraState family without Parent's approval and majority vote of its Board.

Article IX of CHSI's by-laws, titled "Prohibition Against Corporation Earnings" bars diversion of CHSI's income to any individual, and reads as follows:

> 9.1 **Charitable Purpose**. Notwithstanding that [CHSI] is a for profit corporation, no director, officer or employee, member of a committee, or any other individual shall receive any net earnings from the operation of [CHSI]. This section shall not, however, prevent the payment to any such person of reasonable compensation for services rendered to or for [CHSI] in effecting any of its purposes. All directors of [CHSI] shall be deemed to have expressly consented and agreed that, upon dissolution or winding up of the affairs of [CSHI], either voluntary or involuntary, the assets of [CSHI], after all debts have been satisfied, shall be distributed . . . to [I.R.C. §501(c)(3) organization/s].

Article X titled "Investments," allows the co-mingling of "any asset of" CHSI "with other corporate assets . . . subject to any limitations, conditions, or requirements which may be part of any gift." However, assets could also be kept segregated especially "when the conditions, limitations or instructions of any gift, grant, bequest or devise shall require such segregation."

---

[2] CHSI's pleadings or certifications in support thereof never contended or alleged that CHSI had patients.

CHSI acquired the Subject on January 1, 2008, from CentraState Healthcare Foundation, Inc. ("Foundation") "for internal bookkeeping/accounting purposes."[3] Per CHSI's officer's certification, the Foundation had insufficient "unrestricted cash assets" in 2007 to "support its operations." The Foundation conveyed the Subject to CHSI "for cash flow purposes," and also because it "was necessary to continue and maintain the hospital purpose of," and use of the Subject by CMC. The transfer was apparently approved by the Boards of both CHSI and the Foundation. Per the certification, a "loan obligation was put in place between" the Foundation and CHSI.[4] Each month CHSI collects an amount from CMC which is "commensurate with the principal and interest" due from CHSI to the Foundation, and pays that entire amount over to the Foundation. For instance, the amount of $94,935 shown as "leasing fee,"[5] although paid to CHSI by CMC, was the amount due by CHSI to the Foundation, therefore, "passe[d] directly from [CHSI] to the Foundation." Per CHSI's officer, this is the "only" item paid to CHSI by CMC. He also certified that CHSI does not "realize[] any dividends or distributions . . . from the operation of" CMC at the Subject.

On October 28, 2008, CHSI filed a "Further Statement" to the Township's assessor for a "continuation" of the local property tax exemption for the Subject. The document noted that the "initial statement" claiming an exemption for the Subject was filed on November 1, 1995, and while there were no changes to the physical structure or use, the Subject's ownership had changed.

---

[3] Per CHSI's officer's certification, the Foundation is a nonprofit entity which "supports" the CentraState family "in their charitable mission to support the communities served" by the family affiliates. The information on Parent's website (provided to the court by CHSI) states that the Foundation is the Parent's "charitable division" which "recently completed a $10-million capital campaign to support" the Parent's ambulatory campuses.

[4] The court was not provided with any documentation evidencing the actual conveyance deed or the loan documents.

[5] This amount was reported on an Income/Expense form attached to CHSI's October 9, 2015 "Further Statement of Organization Claiming Property Tax Exemption," filed with the Township's assessor. However, the income and expense information was that of CMC.

In response to the question "describe the property and state to whom and date conveyed," CHSI replied:

> This is CentraState's clinic for indigent patients. On January 1, 2008, title to this office condo was conveyed by CentraState Healthcare Foundation to [CHSI] for internal bookkeeping/accounting purposes. However, the sole user of the office remains [as CMC].

The form did not provide a space for including the justification for an exemption but simply asked for the property's location "for which continued exemption is claimed."

On October 9, 2015, CHSI filed another "Further Statement of Organization Claiming Property Tax Exemption."[6] It noted that the "initial statement" claiming an exemption for the Subject was on November 1, 1995, and there were "no changes" either to the structure, its use, or ownership since that date. As with the October 2008 form, this form also failed to indicate the justification for an exemption (i.e., did not identify the exempt use/purpose).

## ANALYSIS

### I. *Reconsideration*

A motion for reconsideration must "state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." R. 4:49-2. Dissatisfaction with the court's decision is an inappropriate ground for reconsideration. Palumbo v. Township of Old Bridge, 243 N.J. Super. 142, 147 n.3 (App. Div. 1990) ("[w]e . . . disapprove of the excessive use of motions for reconsideration . . . [which are being] made with increasing frequency when essentially there is little more than disagreement with the Court's decision. Motions for reconsideration were never meant to be a substitute for the filing of a timely appeal").

_____

[6] See supra n.5.

A reconsideration motion will be granted "only for those cases which fall into that narrow corridor in which either 1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). The movant must "initially" show that the court "acted in an arbitrary, capricious, or unreasonable manner, before the Court should engage in the actual reconsideration process." Ibid.

The Township correctly notes that this court erred in believing that the two cases that it had relied upon, Intercare, supra, and Mega Care, supra, involved the same type of subsidiaries as CHSI, i.e., they were for-profit subsidiaries of a non-profit hospital parent entity. In fact, those cases had involved non-profit affiliates of a non-profit hospital. Thus, the very issue posited in the Township's partial summary judgment motions, viz., that the for-profit status of CHSI as, per se, destroying the Subject's eligibility for property tax exemption, was never an issue in those two cases. The court agrees that it erred in this respect. Therefore, it will reconsider its decision to deny partial summary judgment.

II. *Tax Exemption*

Tax exemptions are only allowed by "general laws," and can be modified or repealed "except those exempting real . . . property used exclusively for religious, educational, charitable or cemetery purposes, as defined by law, and owned by any corporation or association organized and conducted exclusively for one or more of such purposes and not operating for profit." N.J. Const., Art. VIII, §1, ¶2.

N.J.S.A. 54:4-3.6 (clause 8) authorizes local property tax exemption for buildings (and up to five acres of land on which such building is situated), or the portion thereof which is "actually

9

used in the work of . . . corporations organized exclusively for hospital purposes."[7] Any portion that is leased to profit-making organizations or otherwise used for non-exempt purposes is taxable. Ibid. This partial allowance is intended to apply to buildings owned by exemption-qualifying entities and leased to for-profit entities, not vice-versa. Savage Mills Enters. v. Borough of Little Silver, 29 N.J. Tax 295, 306 (Tax 2016). In addition to the actual use and exclusive organization for hospital purposes, (1) "the buildings, or the lands on which they stand, or the . . . corporations . . . using and occupying them," should not be "conducted for profit;" (2) the corporate claimant must "own[] the property in question;" (3) the corporate claimant is "incorporated or organized under" New Jersey laws; and, (4) the corporate claimant is "authorized to carry out the purposes on account of which the exemption is claimed." N.J.S.A. 54:4-3.6.[8]

In Paper Mill Playhouse v. Township of Millburn, 95 N.J. 503, 506 (1984), a case oft cited for explicating the requirements for the exemption grant as a three-prong criteria, the court stated the first criterion is that the claimant "must be organized exclusively for" the statutorily stated purpose, second, the property must be actually used for the tax-exempt purposes, and third is that the "operation and use of its property must not be conducted for profit." Precedent has also always required a "confluence" of ownership and use as of the assessment date for the tax exemption to apply. Bethany Baptist Church v. Township of Deptford, 225 N.J. Super. 355, 360 (App. Div. 1988)

---

[7] The exemption for hospitals began in 1851 based on "charitable purposes." AHS Hosp. Corp. v. Township of Morristown, 28 N.J. Tax 456, 486-89 (Tax 2015). In 1913, the statute included "hospital purpose," as a basis for an exemption. Id. at 490-91 (quoting L. 1913, c. 278, §1 which provided an exemption for "buildings actually used for . . . associations and corporations organized exclusively for . . . charitable . . . or hospital purposes; or for one or more such purposes, not conducted for profit . . . ."). In 1993, the law was amended to include a definition of "hospital purposes." See L. 1993, c. 166 (describing the amendment as "an Act concerning the exemption of certain non-profit health care property from local property taxation").

[8] These additional conditions apply to all of the specified types of property owners and property uses in N.J.S.A. 54:4-3.6.

The Township argues that CHSI fails to meet the first prong, i.e., "the organized exclusively" requirement for tax exemption by the mere fact of its incorporation as a for-profit entity. CHSI maintains that this sole fact should not control since other facts support its entitlement to a tax exemption, namely: (a) it is owned 100% and controlled by Parent, a non-profit entity; (b) the Subject is occupied solely by CMC, a sister non-profit entity; (c) the Subject is used solely for the health care activities of CMC, which is licensed by the State to provide such care; and (d) CHSI's by-laws bar diversion of its earnings to, or for the benefit of any individual. CHSI argues that once it can establish its substantial integration with Parent and/or CMC, the court can properly decide that the Subject should be tax exempt.

The primary issue is whether CHSI's for-profit incorporation ends an exemption inquiry. The court first notes that N.J.S.A. 54:4-3.6 which exempts buildings actually used for hospital purposes does not specifically require that a corporation must be incorporated as a nonprofit entity under Title 15A of the New Jersey statutes. This is in contrast to such explicit requirement in other portions of the same statute. For instance, the statute requires a "volunteer first-aid squad," to "be incorporated as associations not for pecuniary profit." N.J.S.A. 54:4-3.6 (clause 5). Buildings owned by an entity "created under or otherwise subject to . . . Title 15 . . . or Title 15A," are exempt provided they are "actually and exclusively used in the work of" entities which are "organized exclusively for charitable or religious purposes," with or without paying rent for such use. Ibid. (clause 10). Similarly property "owned and used by any nonprofit corporation" is exempt if the use is "in connection with its curriculum, work, care, treatment and study of men, women, or children with intellectual disabilities." Ibid. (clause 14). Land purchased under Title 40A and "actually used" to cultivate/sell produce is exempt if "owned by a duly incorporated nonprofit organization or association," which has as one of its "principal purpose[] the cultivation and sale

11

of" produce.  Ibid. (clause 16).  An exemption is also granted where an educational institution has leased its property "to a historical society or association or to a corporation organized for such purposes and created under or otherwise subject to . . . Title 15 . . . or Title 15A."  Ibid. (clause 16).[9]

However, the fact that N.J.S.A. 54:4-3.6 references to Title 15A in some instances but not to an entity organized for "hospital purposes," does not mean that a for-profit entity organized for conducting "hospital purposes" can benefit from a tax exemption.  It is an absurd conclusion not only because the various exemptions are contained in one sentence within the same statute, but also because the very basis for tax exemptions is that non-profit entities, as opposed to for-profit ones, relieve the government of an economic/social burden.  Thus, the tax exemption is justifiably provided as a quid pro quo to non-profit entities.  See Jersey Shore Medical Center v. Township of Neptune, 14 N.J. Tax 49, 56 (Tax 1994).

Additionally, courts have consistently interpreted N.J.S.A. 54:4-3.6 as requiring a corporate claimant to be organized and incorporated as a nonprofit entity.  For instance, although Article VIII of the Constitution requires a corporation seeking exemption be one which is "not operating for profit," (emphasis added), the Supreme Court has interpreted this to mean "[r]eal property owned by a non-profit . . . organization, which is used exclusively for charitable purposes . . . is specifically exempted from taxation under the New Jersey Constitution."  Advance Housing, Inc. v. Township of Teaneck, 215 N.J. 549, 566 (2013) (emphasis added).  Cf. Hunterdon

---

[9] The title of the statute in the New Jersey Statutes Annotated, a West publication, is reflected as "Exemption of property of nonprofit organizations."  However, the title of the same statute in the electronic version published by Lexis, is "Tax exempt property."  A review of the public laws starting from 2001 show the title as "Tax exempt property."  See L. 2001, c. 18; L. 2010, c. 50; L. 2011, c. 35; L. 2011, c. 171.  However, the 1993 amendment (L. 1993, c. 166) was synopsized as "An Act concerning the exemption of certain non-profit health care property from local property taxation, and amending [N.J.S.A.] 54:4-3.6."

Medical Center v. Township of Readington, 195 N.J. 549, 574 (2008), where the Court observed that analysis of the actual user of a hospital's off-site facility "does not replace the separate consideration for eligibility under N.J.S.A. 54:4-3.6, namely that an endeavor not be established or run as a profit-making operation." (emphasis added). Cf. also Presbyterian Home at Pennington, Inc. v. Borough of Pennington, 409 N.J. Super. 166, 182-183 (App. Div. 2009) (explaining the 1993 legislative amendment which expanded the definition of "hospital purposes" as an intent to explicitly include "non-profit health care facilities for the elderly," therefore, amending "the current exemption law on nonprofit organizations" so that "non-profit hospitals, religious homes and residential health care facilities will all be treated the same way with the same rules" allowing "non-profits [to] hold their costs down"), rev'g on other grounds, 23 N.J. Tax 473, (Tax 2007), certif. denied, 201 N.J. 143 (2010)), and Renaissance Plaza Associates, L.P. v. City of Atlantic City, 18 N.J. Tax 342, 353 (Tax 1998) (where a for-profit lessee is deemed as an owner of property under a 99-year lease, then, "[b]ased on ownership, the property is not tax exempt").

That a claimant must be incorporated as a non-profit entity was explicitly made clear in Fountain House of New Jersey, Inc. v. Township of Montague, 13 N.J. Tax 387 (Tax 1993), which interpreted the "exclusively organized" requirement of N.J.S.A. 54:4-36. After noting that this phrase was undefined, the court held that a "two-pronged test" should be applied whereby a corporate claimant seeking an exemption must show that it is (1) "formally incorporated under Title 15A . . . and thereafter, (2) conducted exclusively for the accomplishment of one or more purposes qualifying for exemption under N.J.S.A. 54:4-3.6." Fountain House, supra, 13 N.J. Tax at 397, 400. Proof thus, is required as to both "formal compliance with the provisions of Title 15A

13

. . . and an exclusive purpose." Ibid.[10]  A claimant must show "its requisite character and exempt purpose not only by its formal organizational documents but also by the activities it performs after its existence has commenced." Id. at 399.

However, eligibility for the exemption "does not turn solely on compliance with Title 15A." Id. at 400.  This means that simply because a claimant is incorporated (i.e., organized) as a non-profit entity under New Jersey statutes does not entitle it to an exemption since "[t]o examine merely the formalities of organization without examining the actual conduct (activities) of the corporation thereafter, would result in the elevation of form over substance." Id. at 399-400.  On the other hand, an "exemption may not be obtained in the absence of such compliance." Id. at 400.  This means that if the claimant is not incorporated (i.e., organized) as a non-profit entity, then the exemption is unavailable.

Based on the above precedent, and the two-prong test in Fountain House, supra, which this court agrees is fully reflective of the statutory intent and narrow construction afforded tax exemption statutes, CHSI's argument that its for-profit status can be ignored for purposes of N.J.S.A. 54:4-3.6 is untenable.

It is true that in InterCare, supra, and Mega Care, supra, the courts considered the actual use and operation of the building to analyze whether a subsidiary of a non-profit parent hospital can obtain a derivative tax exemption under the category of "hospital purposes."  As noted in Mega Care, supra, although courts have always required confluence of use and ownership, "it is not unreasonable to infer that the purpose or design inherent in . . . [this] requirement . . . is to assure that exempt property is not only put to an eligible use, but also that it is held for and appropriated

_____

[10] The case involved a claim for exemption under the "moral and mental improvement" category, the requirements for which are almost identical to the language exempting buildings used for hospital purposes.  See N.J.S.A. 54:4-3.6 (clause 6).

14

to the user's exempt purposes." 15 N.J. Tax at 574. Relying on holdings from other jurisdictions that an exemption is allowable to a property "technically" owned by "a separate legal entity so long as the property is actually owned and controlled by a tax-exempt organization and is used for appropriate qualified purposes," the court concluded that "the substance of the ownership requirement is satisfied with respect to the property of a subsidiary or commonly controlled affiliate of an exempt entity, if the affiliate's operations are limited to support of that entity." Ibid.

However, these two cases do not support a finding that CHSI can benefit a similar derivative exemption by virtue of the fact that Parent (CHSI's sole shareholder) or CMC are non-profit entities, once CHSI proves integration of its operations with either. Both Intercare, supra, and Mega Care, supra, involved nursing homes seeking exemption for tax years before the Legislature expanded the definition of "hospital purposes" in N.J.S.A. 54:4-3.6 to include nursing homes or elder care facilities. Such facilities can now independently qualify for exemption. Therefore, use of the integration test in the instant matters as support for a derivate exemption is at best distinguishable, if at all applicable, since (1) CHSI's ownership of the Subject, as a for-profit entity is the crux of the issue, and, (2) the Subject need not resort to a derivative exemption when it could independently qualify for exemption if its use by CMC falls within a "hospital purpose."

Second, and more importantly, the tax exemption claimants in Intercare, supra, and Mega Care, supra, were non-profit entities with their organizational documents reciting non-profit purposes. Indeed, in Intercare, supra, the claimant entity "was converted to nonprofit status," its purposes were "restated to include" its purposes of owning and/or operating nursing homes, and its by-laws recited that the entity was "organized" and had to operate "exclusively for charitable, educational and scientific purposes." 11 N.J. Tax at 425.

15

Further, despite their non-profit status, the entities' claims for exemption in Intercare, supra, and Mega Care, supra, were nonetheless restrictively construed in that the courts scrutinized their certificates of incorporation to decide if they merited an exemption. In Intercare, supra, the Appellate Division looked to the certificate of incorporation to hold that the taxpayer was "incorporated" to buy or build and operate a housing project or nursing home, therefore it failed "to satisfy the statutory requirement that the corporation claiming the exemption must have been incorporated for hospital purposes." 12 N.J. Tax at 275. Similarly, Mega Care, supra, held that the "statutory requirement concerning" a claimant's "corporate organization . . . must be satisfied before an inquiry may proceed into the integration of its nursing home operations with those of the affiliated hospital." 15 N.J. Tax at 571. "Both the ownership requirement and the requirement of incorporation for hospital purposes" is satisfied if "the affiliate's certificate of incorporation limits its activities to those undertaken in support of and integration with those of the hospital." Id. at 575.[11] See also Planned Parenthood v. City of Hackensack, 12 N.J. Tax 598, 610 n.6 (Tax 1992) (the "better view is that the term 'organized' in the statute refers to the entity's organizational documents, its corporate charter.") (citations omitted), aff'd per curiam, 14 N.J. Tax 171 (App. Div. 1993); 1711 Third Ave., Inc. v. City of Asbury Park, 16 N.J. Tax 174, 181 (Tax 1996) (rejecting a view "that to determine whether a claimant is organized for an exempt purpose, its operations are to be reviewed," since an entity's organization purpose is "plainly distinct" from its "operations," and the statute does not mandate an "entity-level operational test in the hospital . . . exemptions").

---

[11] The court granted partial summary judgment denying the exemption claim because the non-profit subsidiary nursing home's "certificate of incorporation did not specifically limit its activities to those conducted in support of and integration with the [parent] hospital," thus, "proof of integration would be insufficient to support the exemption claim." Mega Care, supra, 15 N.J. Tax at 575.

That CHSI's by-laws allude to a non-profit operation by barring diversion of CHSI's profits/income to any individual, does not alter the conclusion that the claimant must be incorporated as a non-profit entity. See e.g. Mega Care, supra, 15 N.J. Tax at 575, n.4 (rejecting a claim the claimant's "by-laws specifically reflect integrated operation with a hospital" because "the requirement of incorporation for hospital purposes pertains, the cases all indicate, to the certificate, not to the by-laws.").

Here, CHSI's certificate of incorporation recites that it was formed under Title 14A and can perform activities permitted by that statute. It does not recite any non-profitable or hospital purpose as its exclusive purpose. Its by-laws also recite that CHSI's primary purpose is to do all activities authorized by Title 14A. That they state that CHSI can also engage in health related activities beneficial to "the communities . . . served by" the Parent and its subsidiaries and recite a non-inurement of profits to any private individual does not convert CHSI's for-profit status to a non-profit, or alter the purposes in its certificate of incorporation. Rather, it only shows that CHSI, as a for-profit entity, was clearly not organized "exclusively" for tax-exempt hospital purposes. This is especially where by-laws represent the operations of an entity not its organizational creation and purpose, thus, do not require to be filed with the State as is required of a certificate of incorporation. See N.J.S.A. 14A:2-7(2); N.J.S.A. 14A:3-1(1)(k) (a corporation can "make and alter by-laws for the administration and regulation of the affairs of the corporation."). See also Delmarmo Associates v. New Jersey Engineering & Supply Co., 177 N.J. Super. 15, 17 (App. Div. 1980) (by-laws represent "a contract between the corporation and its stockholders and the stockholders inter sese.") (citation omitted). To deem the language in the by-laws as controlling or substituting the organizational language in the articles of incorporation, would render the third

criteria for exemption set forth in <u>Paper Mill</u>, <u>supra</u>, (that the "operation and use of its property must not be conducted for profit") redundant, an erroneous consequence.

In this connection, CHSI's officer's certification that CHSI's certificate of incorporation did not provide space to include its alleged non-profit purposes, thus, should not take away from its claim for tax exemption, is unpersuasive. CHSI was fully cognizant of its for-profit status as evidenced by its by-laws, yet chose not to incorporate as a non-profit entity. The transfer of the Subject to CHSI by Foundation for alleged cash flow issues appears to be for a business purpose, as opposed to any statutorily exclusive exempt purpose. Pertinent to tax exemptions, strict construction cannot allow for treating an "incorporation as a Title 14A corporation [as opposed to Title 15A] . . . akin to a clerical mistake," but must be viewed as "a voluntary business decision" with the consequent tax effects. <u>See</u> <u>Ukranian Nat'l Urban Renewal Corp. v. Director, Div. of Taxation</u>, 3 <u>N.J. Tax</u> 326, 331 (Tax 1981).[12]

In sum, this court concludes that the Subject fails to qualify for tax exemption under <u>N.J.S.A.</u> 54:4-3.6 because it is owned by CHSI, a for-profit entity, and legal title holder to the Subject as evidenced by CHSI's certificate of incorporation. The integration tests, and consequent derivative exemption holdings in <u>Intercare</u>, <u>supra</u>, and <u>Mega Care</u>, <u>supra</u>, do not apply here because those subsidiaries were non-profit entities (and can now, due to legislative amendment, obtain an exemption independently). Nor do those two cases revoke, abrogate or overrule the two-pronged test set forth in <u>Fountain House</u>, <u>supra</u>. Further, those two cases never disavowed the requirement that a corporate claimant be organized under Title 15A and that its organizational documents state an exclusive tax-exempt purpose.

---

[12] That case dealt with the Corporation Business Tax ("CBT") statute whereby a "nonprofit" corporation is tax exempt if it is both "established, organized . . . under . . . Title 15A . . . , and not conducted for pecuniary profit of any private shareholders or individual." <u>N.J.S.A.</u> 54:10A-3.

18

Thus, CHSI's formal incorporation as a for-profit entity, standing alone, suffices to disqualify it from receiving tax exemption for the Subject. While an entity can incorporate and organize itself as for-profit under Tile 14A to engage in activities constituting "hospital purposes," the conscious decision to choose such a status does not allow it to qualify for a tax exemption.[13]

Grant of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Denial is appropriate "where the party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 540.

Here, the material facts relative to the legal issue are undisputed, namely, that CHSI was incorporated as a for-profit entity under the New Jersey statutes, therefore, by law, it does not

---

[13] The court brought to the parties' attention an unreported Appellate Division decision that appeared to suggest that an integration test may be employed regardless of the for-profit status. 1785 Swarthmore, LLC v. Township of Lakewood, 2015 N.J. Super. Unpub. LEXIS 2478, *1, 20 (App. Div. 2015). Cognizant of the bar in R. 1:36-3, but also noting that while not precedential, can "constitute secondary authority," see Pressler & Verniero, Current N.J. Court Rules, comment 2 on R. 1:36 (2018), the court alluded to the case due to its factual similarities with the instant matters (exemption sought for property owned by a for-profit limited liability company whose 100% shareholder was a single-member non-profit entity created under Title 15A), and since the higher court noted that the "record" did not show the subsidiary's "operation was 'sufficiently integrated' with that of [the parent] so as to be an 'integral part of operating' [the parent]." (citing to Mega Care, supra, and Intercare, supra). Although this court has detailed sufficient reasons for its opinion, it notes that the unpublished opinion supports its conclusion since (1) it involved summary judgment motions; (2) the court did not remand the matter for a trial; and, (3) regardless of the integration test, the court emphasized that the certificate of incorporation controls examination of the "exclusively organized" prong of the exemption. Thus, the "bottom line" conclusion in that case is persuasively conclusive here, namely, that a for-profit entity "simply does not meet" the statutory requirement of being "organized exclusively for the tax exempt purpose," regardless of "the fact the property is actually and exclusively used for the tax exempt purpose and its operation and use is not conducted for profit." 1785 Swarthmore, supra, 2015 N.J. Super. Unpub. LEXIS 2478 at *22.

qualify for tax exemption since it fails to meet the first criteria of <u>N.J.S.A.</u> 54:4-3.6, which is that it be "organized exclusively for hospital purposes," as that quoted phrase has been interpreted by precedent. Therefore, it is proper to grant Freehold's motions for partial summary judgment.

## <u>CONCLUSION</u>

For the above reasons, the court grants Freehold's reconsideration motions, and thus, its partial summary judgment motions. Trial on valuation will proceed in due course.

Very truly yours,

Mala Sundar, J.T.C.